UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| DALE DEAN GOINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV408-150 |
| | ) | |
| DR. JANE F. WEILENMAN, DR. STOCKFISCH, COUNSELOR SMILEY, and DR. McCRAY, | ) ) ) ) | |
| Defendants.[1] | ) | |

## REPORT AND RECOMMENDATION

Dale Dean Goins, currently detained at Phillips State Prison, filed this 42 U.S.C. § 1983 civil rights complaint claiming that defendants subjected him to a retaliatory transfer from Coastal State Prison to Phillips. (Doc. 5 at 2.) Denying liability, defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (docs. 27, 30), which Goins opposes (docs. 29, 31). For the reasons that follow, defendants' motion should be **GRANTED** and this case should be **DISMISSED**.

---

[1] The Court has amended the caption to reflect the correct spelling of the defendants' names. All subsequent filings shall conform.

# I. BACKGROUND FACTS

While incarcerated at Coastal State Prison, Goins was under the care of Doctor Jane Weilenman, a psychologist who treated his anger issues and other mental health problems. (Doc. 1 at 3.) Initially, the sessions went well. Goins attempted to befriend Weilenman, making her several handcrafted items, including a purse, a rocking chair, and some tables, but the relationship soured over time. (*Id.*) Goins states that it started to deteriorate when Weilenman and another counselor (perhaps Smiley) laughed at a Mother's Day picture Goins had made for her. (*Id.* at 4.) Later, Goins indicates that he threatened his own life and cut himself, but rather than placing him in observation, Weilenman simply asked if "it made [him] feel better." (*Id.*) Eventually, a situation arose regarding his contact with Charles Ware, another of Weilenman's patients, and his therapy sessions were stopped. (*Id.* at 5.) Around that same time, Goins filed an informal grievance accusing Doctors Weilenman and Stockfisch and Counselor Smiley of racial discrimination and alleged "that Doctor Weilenman had falsified state documents to help black inmates make

parole."[2] (Doc. 29 at 6-7 ("Goins Aff."); doc. 32 (letter from Goins's wife discussing discriminatory parole recommendations).) Shortly thereafter, Goins was transferred to Phillips State Prison. (Doc. 5.)

Goins contends that Weilenman, Stockfisch, McCray, and Smiley, acted in "collusion" in effectuating the transfer in retaliation for his filing of that grievance. (*Id.*) The defendants paint a very different picture. They admit that they recommended the transfer, but they state that they did so because Coastal State Prison was no longer equipped to handle Goins. (Doc. 27-11 at 4-9.) They state that over the course of Goins's incarceration he became infatuated with Doctor Weilenman and Counselor Smiley and exhibited self-injurious conduct that mandated his transfer to another facility under the applicable Georgia Bureau of Prisons Standard Operating Procedures. (*Id.* ¶ 11-21.) They also allege that they were unaware that Goins had filed a grievance alleging racial discrimination. And even though

---

[2] Goins states that he filed the grievance on July 17, 2008. (Goins Aff.) He submitted a copy of the grievance receipt, and a copy of an August 1, 2008 grievance referencing the July 17, 2008 grievance. (Doc. 29, Exs. A & 3.) Defendants however, insist that no such grievance exists and have presented an authenticated copy of the institutional records which do not contain such a grievance. (Doc. 30 at 2.) There is a clear fact issue as to whether such a grievance was filed, but it is ultimately irrelevant to the Court's analysis. Goins filed another grievance alleging retaliation on July 24, 2008, just after the transfer was ordered. (Doc. 27-8 at 54.)

they recommended the transfer, they were not the ultimate decision-makers responsible for it.[3] (*Id.* ¶¶ 22-23, 35.)

## II. LEGAL FRAMEWORK

Rule 56 of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if it might affect the outcome of the case under the governing law. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1518 (11th Cir. 1990) (citations omitted).

The moving party "always bears the initial responsibility of informing

---

[3] In addition, defendants contend that Goins has failed to exhaust his administrative remedies. (Doc. 27-2 at 14-16.) The argument is fatally flawed. Defendants are apparently operating under the mistaken assumption that Goins must exhaust his initial grievance alleging discrimination. This case, however, involves a retaliatory transfer based upon Goins's filing of those grievances. Accordingly, the proper question is whether Goins exhausted his remedies as to the retalitory *transfer*. But under the applicable Georgia Bureau of Prisons operating procedures, "[t]ransfers of inmates between institutions" is a non-grievable issue. SOP IIB05-0001(VI)(A)(4)(c); *cf. Bailey-El v. Fed. Bureau of Prisons*, 246 F. App'x 105, 107 (3d Cir. 2007) (indicating that *federal* prison regulations permit such a grievance). Defendants even admit that the issue is not grievable. (Doc. 27-11 at 9 ¶ 39.) Accordingly, there is no exhaustion issue in this case. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to a prison conditions suit under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted.") (emphasis added).

4

the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." *Tidmore v. BP Oil Co./Gulf Prods. Div.*, 932 F.2d 1384, 1387 (11th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the

parties. *Baker*, 903 F.2d at 1519.

## III. ANALYSIS

Inmates hold no constitutionally protected liberty interest against being transferred to a particular prison. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). But if an official transfers or otherwise punishes a prisoner in retaliation for exercising his right to file grievances against prison officials, he violates the prisoner's First Amendment rights. *Bridges v. Russell*, 757 F.2d 1155, 1157 (11th Cir. 1985); *see also Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). Indeed,

> [i]t is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement. *See, e.g., Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir.2003). It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. *Id.* To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir.2005).

*Smith v. Mosley*, 532 F.3d 1270, 1272 (11th Cir. 2008). Assuming without deciding that plaintiff has met the first two elements, he fails on causation.

6

"The causal connection inquiry asks whether the defendants were subjectively motivated to discipline because [plaintiff] complained of some of the conditions of his confinement." *Smith*, 532 F.3d at 1278 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)). Here, defendants each aver that they had no idea that Goins had filed a grievance alleging racial discrimination[4] and that Goins was transferred because he was infatuated with Doctor Weilenman and Counselor Smiley, had exhibited self-injurious and suicidal behavior on several occasions, and Coastal State Prison was not well equipped to handle such an inmate. (*See* Doc. 27, Ex. 4 ("Stockfisch Aff."); *id.*, Ex. 5 ("McCray Aff."); *id.*, Ex. 6 ("Weilenman Aff."); *id.*, Ex. 7 ("McCray Aff.").) Weilenman explains in her affidavit that Goins was a Level III mental health inmate who "[o]n multiple occasions . . . engaged in self injurious behaviors (cutting) but had a pattern of keeping it secret for a few days and then would show the injured area to the staff." (Weilenman Aff. ¶¶ 4-5.) She goes on to explain that "due to his multiple cutting incidents and suicidal gestures, Mr. Goins needed to be stabilized at a facility with a [Crisis Stabilization Unit] where he would have access to

---

[4] Counselor Smiley admits that she "was responsible for forwarding grievances filed by the inmates to the Deputy Warden of Care and Treatment," but she "never was asked to investigate or respond to [such] grievance[s] . . . and [did] not know the nature of any grievance of grievances" so filed. (Doc. 27, Ex. 7 ¶ 7 (McCray Aff.).)

7

more intensive mental health services," and Coastal State Prison did not have such a unit. (*Id.* ¶¶ 3, 5.) Additionally, she insists that Goins "viewed [her] and Counselor Smiley as his family members . . . [and] became extremely jealous of any services that [they] provided to other inmates." (*Id.* ¶ 6.) His infatuation "interfered with his mental health services and treatment at Coastal." (*Id.*) Goins admits in his original complaint that he made Weilenman various hand-crafted items and told her that "she looked young and . . . beautiful" and that he "cut [him]self in May" of 2008. (Doc. 1 at 4.)

Goins proffered no sworn evidence relevant to the issue with his response to defendants' motion for summary judgment.[5] But he states in his amended complaint, signed under penalty of perjury pursuant to 28 U.S.C. § 1746, that Doctor Weilenman "acted in collusion with other mental health staff, Doctor Stockfis[c]h (psychiatrist), Mrs. Smiley (counselor) and Doctor [McCray] to retaliate against [him] for filing grievances for racial discrimination and reverse racial discrimination." (Doc. 5 at 2.) Such sworn pleadings are considered the equivalent of an affidavit and are competent

---

[5] His sole affidavit relates to the existence of the July 17, 2008 grievance, which, as noted above, is disputed by defendants. (Goins Aff. ¶ B.)

8

evidence for summary judgment purposes when they assert non-conclusory allegations based on the plaintiff's personal knowledge. *Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *see Murrell v. Bennett*, 615 F.2d 306, 310 n.5 (5th Cir. 1980); *see also Hart v. Hairston*, 343 F.3d 762, 764 n.1, 765 (5th Cir. 2003); *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994 (8th Cir. 2001); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). Goins's assertion, however, is unsupported by any further factual allegations and is speculative and conclusory at best. Accordingly, he simply has not created a fact issue as to the element of causation.[6]

Moreover, "most courts resolve th[e] subjective motivation issue [under the causal element by using] the *Mt. Healthy* burden-shifting formula." *Smith*, 532 F.3d at 1278 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). Under that approach,

> [o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on [his

---

[6] Additionally, Goins originally insisted that "Weilenman wants me punished more, and wants me sent to a worse prison just because she is mad because I said something to Charles Ware." (Doc. 1 at 5.) That is, he originally attributed the transfer to something other than retaliation for filing a grievance.

9

> motion for judgment as a matter of law or prior to trial on] summary judgment. *Thaddeus-X*, 175 F.3d at 399 (citation omitted).

*Id.* (alterations in original); *Coward v. Captain Gonzales*, 2009 WL 918637 at *6 (M.D. Ga. Feb. 24, 2009) (unpublished). "[T]he question for the court under *Mt. Healthy* [becomes] whether a reasonable fact finder, a jury, would have to find that the defendants would have [taken the adverse action against plaintiff] 'even in the absence of the protected conduct,' i.e., the submission of grievances." *Smith* 532 F.3d at 1279; *Coward*, 2009 WL 918637 at *6. Here, even if the Court were to credit Goins's conclusory assertion of subjective motivation, the undisputed sworn testimony of each of the defendants shows that they still would have recommended that Goins be transferred to a different facility.

Finally, the undisputed testimony of the defendants establishes that they were not the decision-makers responsible for Goins's transfer. They each assert that they simply recommended that Goins be transferred to a different facility but that the final decision rested with Georgia Department of Corrections. (Stockfisch Aff. ¶ 8; McCray Aff. ¶ 8; Weilenman Aff. ¶ 11; Smiley ¶ 8.) Where the defendant is not the decision-maker, there is no causal connection between the filing of grievances and the subsequent

transfer. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (no causal connection between filing of grievances and transfer when uncontroverted that defendant was not the decision-maker); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir.1999) (defendants, prison officials who supervised inmate plaintiff in prison commissary, were not the decision-makers under a retaliation claim because they did not have the authority to terminate him, the adverse action he alleged); *see Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999) (similar reasoning applied in Title VII claim).

## IV. CONCLUSION

Goins has failed to raise a genuine issue of material fact requiring a trial on his claim of retaliatory transfer, so defendants are entitled to judgment as a matter of law. Accordingly, defendants' motion for summary judgment (doc. 27) should be **GRANTED**, and this case should be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this <u>27th</u> day of April, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**
